IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LAKEYSIA WILSON,                        *
                                        *
                    Plaintiff,          *
                                        *
vs.                                     *          No. 4:15CV00466 SWW
                                        *
ARKANSAS DEPARTMENT OF                  *
HUMAN SERVICES,                         *
                                        *
                    Defendant.          *
                                        *

**<u>OPINION AND ORDER</u>**

Plaintiff Lakeysia Wilson filed a complaint in which she alleges she was subjected to

unlawful employment practices because of her race and her opposition to discrimination in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §

1983.[1]  Defendant Arkansas Department of Human Services ("DHS") moves to dismiss the

complaint for failure to state a claim.  For the reasons stated below, the motion is granted.

I.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed.R.Civ.P. 8(a)(2).  A complaint must plead "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[1]As the basis for her claim under § 1983, plaintiff alleges unlawful employment practices were
committed by defendant while acting under color of law.  Title VII provides the exclusive remedy for
employment discrimination claims created by its own terms, but "its exclusivity ceases when the
employer's conduct also amounts to a violation of a right secured by the Constitution." *Henley v. Brown*,
686 F.3d 634, 642 (8th Cir. 2012).  Plaintiff makes no allegations to support a claim based on a violation
of the Constitution.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The Court must accept as true all factual allegations in the complaint, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In deciding whether the plaintiff states a claim upon which relief can be granted, the Court must determine whether she has plead facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   A complaint cannot simply "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery."   *Id*. at 561 (citation omitted).   Rather, the facts set forth in the complaint must be sufficient to "nudge[] [the] claims across the line from conceivable to plausible . . ."   *Id*. at 569.

## II.

Ms. Wilson went to work for DHS in June 2011 as a field investigator in the Division of Aging and Adult Services in the Adult Protective Services section.   Ms. Patricia Robins, a white woman, was Wilson's supervisor.   Mr. Douglas Walker, a white male, serves as head of the Division of Aging and Adult Services.   Ms. Sharon Meeks, an African-American woman, was also employed as a field investigator in the same section.   In April 2013, Meeks and Robins, among others, applied for a DHS Administrator's position.   According to Wilson, Meeks's supervisor met with Meeks in August 2013 to advise her that she was under investigation for making calls of a sexual nature.   Mr. Walker directed Robins to investigate the allegations.   In September 2013, Meeks was terminated for allegedly violating DHS's policy against sexual harassment.   Ms. Robins received the administrator position that she and Meeks had been seeking.

Ms. Meeks filed an EEOC charge of race discrimination against DHS and also filed an internal grievance over her firing.  On or about January 30, 2014, the State Appeal Panel reversed her termination and ordered DHS to reinstate Meeks.  According to the complaint, DHS resisted the ruling, telling Meeks there were no available positions.  On her own, Meeks discovered there was a program supervisor position available in the Division of Aging and Adult Protective Services, where Meeks previously worked.

During the early part of 2014, Robins encouraged Wilson to apply for a program supervisor position that previously was held by a white male.  Ms. Wilson alleges Robins told her the position was open for only one week and she needed to apply as soon as possible.  Unbeknownst to Wilson, Meeks was interested in the position and had or was going to apply.  Wilson says Robins also encouraged Tony Malone, a black male to apply but he did not.  According to Wilson, because Malone refused to apply for the position, he was relocated and eventually resigned because he was unhappy with his forced relocation.  Ms. Wilson alleges Robins knew Meeks was qualified and was interested in applying for the position.  She claims Robins was determined to thwart Meeks's goal to return to the Division of Adult and Protective Services.

Ms. Wilson applied for the position and was told by the Office of Personnel Management ("OPM") that she did not meet the minimum qualifications for the job.  She said Robins and Walker encouraged her to file for reconsideration with the OPM, which made the same determination.  Ms. Wilson alleges Walker then contacted an assistant director and Wilson was placed on the list of qualified candidates and granted an interview.  According to Wilson, she and Meeks were the only candidates for the position, and on March 31, 2014, Wilson got the job.

3

Ms. Wilson says Meeks was placed in the field investigator position that had been vacated by Wilson.  In June 2014, Meeks was terminated.

Ms. Wilson alleges that after she got the supervisor position, Robins began to criticize her work performance.  She claims the criticism was unfair and racially motivated.  On June 30, 2014, Robins gave Wilson the option of being demoted to the field investigator position for Saline and Grant counties, or be terminated.  On July 2, 2014, Robins and Walker stripped Wilson of her supervisory duties.  On September 8, 2014, Wilson filed a charge of discrimination, alleging that she had been harassed because of her race and disability.  Ms. Wilson alleges she was placed on a Performance Improvement Plan ("PIP") on September 30, 2014, in retaliation for filing the discrimination charge.  On October 22, 2014, Wilson was terminated from her employment.  The next day, she filed a second charge of discrimination alleging she was discharged because of her race and in retaliation for her previous complaint about discrimination.

Ms. Wilson filed the complaint before the Court on July 28, 2015.  She alleges defendant discriminated against her by unfairly criticizing her work performance, using her to keep another African-American out of a position, and disciplining her.  She also alleges defendant retaliated against her for having complained about discrimination.  Defendant DHS moves to dismiss the complaint, arguing it is time-barred and that Wilson fails to state a claim for relief.

III.

Attached to her complaint are the two charges of discrimination Wilson filed with the EEOC.  Ms. Wilson did not attach the Right-to-Sue letter issued as to the first EEOC charge she filed in September 2014.  She did attach the Right-to Sue letter the EEOC issued on April 27,

4

2015, as to the October 2014 charge.  Ms. Wilson filed her complaint ninety-two days later.

Pursuant to 42 U.S.C. § 2000e-(5)(f)(1), an action to enforce rights under Title VII must be filed

within 90 days after the plaintiff receives a right-to-sue letter from the EEOC.  The ninety-day

period runs from the date a plaintiff is presumed to have received the EEOC notice, which is

within 93 days of mailing.  *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1

(1984)(plaintiff is presumed to have received the EEOC notice within 93 days of mailing); *see*

*also Frazier v. Vilsack*, 419 Fed. Appx. 686 (8th Cir. 2011)(noting district court applied a

generous five-day presumption of mailing time).   The Court finds Wilson timely filed her

complaint as to the discrimination and retaliation claim that was the subject of her second EEOC

charge and right-to-sue letter.

Ms. Wilson concedes that she did not file timely a cause of action as to the harassment

she claims she was subjected to from approximately April 30, 2014 to August 29, 2014.  She

argues, however, that the harassment is part of a pattern of discrimination that is continuing in

nature and reflected in her second charge of discrimination.  Therefore, the complaint is timely

as to the discriminatory conduct alleged in the first charge of discrimination.

"A plaintiff will be deemed to have exhausted administrative remedies as to allegations

contained in a judicial complaint that are like or reasonably related to the substance of charges

timely brought before the EEOC."  *Williams v. Little Rock Mun. Water Works*,  21 F.3d 218, 222

(8th Cir. 1994).  This rule does not apply to claims that have been asserted in a prior EEOC

charge that were not acted upon in a timely manner.  *Id*. at 222-23; *Spears v. Missouri Dep't of*

*Corr. & Human Resources*, 210 F.3d 850, 853 n.2 (8th Cir. 2000).

> [D]iscrete discriminatory acts are not actionable if time barred, even when they
> are related to acts alleged in timely filed charges.  Each discrete discriminatory

act starts a new clock for filing charges alleging that act. . . . The existence of past
acts and the employee's prior knowledge of their occurrence, however, does not
bar employees from filing charges about related discrete acts so long as the acts
are independently discriminatory and charges addressing those acts are
themselves timely filed.  Nor does the statute bar an employee from using the
prior acts as background evidence in support of a timely claim.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

In her first charge of discrimination, Wilson alleged she was harassed because of her race

and disability for a period from approximately April 30, 2014, to August 29, 2014.  In her second

charge of discrimination, Wilson alleges she was written up on October 7, 2014, for work that a

white employee did not perform because that employee was out on Family and Medical Leave

Act.  Ms. Wilson alleges she herself was on FMLA leave from October 8-19, 2014, and was

discharged on October 22, 2014, in retaliation for filing her first charge of discrimination.  There

is no claim of harassment.

The Court finds Wilson failed to timely file a complaint on her claim of harassment on

the basis of race and disability as stated in her first EEOC charge.  The Court finds the

harassment claim is separate and distinct from her claims of discriminatory treatment and

retaliation claims.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that

(1) she engaged in a protected activity; (2)  adverse employment action occurred; and (3) there is

a causal connection between the two.  *Turner v. Gonzales*, 421 F.3d 688, 696 (8th Cir. 2005).

Ms. Wilson alleges she engaged in the protected activity of filing an EEOC charge and that she

was discharged.  The only allegation in her complaint that evidences a causal connection is the

timing: she was terminated approximately one month after filing her charge of discrimination.

"A temporal connection can demonstrate a causal link between an adverse employment action

and the employee's disability." *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 969-70 (8th Cir. 2014).

> Although it is difficult to find a principle neatly explaining why each of our cases held temporal connection was or was not sufficient to satisfy the causation requirement, it appears that the length of time between protected activity and adverse action is important. The Supreme Court has said: 'The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.' *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted). For instance in *Kipp,* 280 F.3d at 897, we said that 'the interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link.' By contrast, we said in *Sprenger* that proximity of a 'matter of weeks' between disclosure of a potentially disabling condition and adverse employment action was sufficient to complete a prima facie case of discrimination. 253 F.3d at 1113–14. In this case, Smith's family leave began on January 1 and Allen discharged her on January 14. These two events are extremely close in time and we conclude that under our precedent this is sufficient, but barely so, to establish causation, completing Smith's prima facie case.

*Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002). *See* In the absence of any other allegations in the complaint that would establish causation, the Court finds Wilson's complaint fails to allege sufficient facts to raise her right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

In her complaint, Wilson states the following: "The plaintiff was also subject to disparate treatment on account of her race, when she was disciplined for something that a Caucasian female employee did not accomplish, in violation of Title VII of the Civil Rights Act of 1964 (as amended)." Compl. at ¶ 49. To establish a *prima facie* case of disparate treatment, Wilson must show that : (1) she is a member of a protected class; (2) she was qualified for her position and

performed her duties adequately; and (3) she suffered an adverse employment action under circumstances that would permit the court to infer that unlawful discrimination was involved. *See Sallis v. Univ. of* Minnesota, 408 F.3d 470, 476 (8th Cir. 2005).  An adverse employment action means "a material employment disadvantage, such as a change in salary, benefits, or responsibilities."  *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003)(citation omitted).  *E.E.O.C. v. Prod. Fabricators, Inc*., 763 F.3d 963, 969-70 (8th Cir. 2014).  "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause mo materially significant disadvantage, do not rise to the level of an adverse employment action." *Clegg v. Arkansas Dep't of Correction*, 496 F.3d 922, 926 (8th Cir. 2007)(citation and quotation omitted).

Reading her complaint along with her EEOC charge, it appears Wilson is claiming that she was given a written warning for work a "white employee did not accomplish because she was on FMLA, also."[2]  Receiving a written warning does not constitute an adverse employment action.  *See Singletary v. Missouri Dep't of Corrections*, 423 F.3d 886, 891-92 (8th Cir. 2005)(placement on administrative leave pending a disciplinary investigation not adverse employment action where plaintiff maintained same pay, grade, and benefits); *Givens v. Cingular Wireless*, 396 F.3d 998 (8th Cir. 2005)(per curiam)(placement on a PIP is not an adverse employment action).  The Court finds plaintiff fails to allege facts to state a claim for disparate treatment.

IV.

IT IS THEREFORE ORDERED that defendant's motion to dismiss is granted.  Plaintiff's

---

[2]Compl., Ex. B (EEOC Charge of Discrimination).

claims are dismissed.

DATED this 15th day of December, 2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE