IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| LAKEYSIA WILSON, | * |
| | * |
| Plaintiff, | * |
| vs. | * No. 4:15-cv-00466-SWW |
| | * |
| | * |
| ARKANSAS DEPARTMENT OF | * |
| HUMAN SERVICES, | * |
| | * |
| Defendant. | * |

## OPINION AND ORDER

Lakeysia Wilson filed this action against the Arkansas Department of Human Services (DHS) alleging disparate treatment on account of her race, African-American, and retaliation in violation of Title VII, 42 U.SC. § 2000e *et seq.*, and 42 U.S.C. § 1983. DHS moved to dismiss Wilson's claims for failure to state a claim. By Opinion and Order entered December 15, 2015, the Court granted DHS's motion. See *Wilson v. Ark. Dept. of Human Servs.*, No. 4:15cv00466, 2015 WL 9244650 (E.D. Ark. Dec. 15, 2015). Wilson appealed and, on March 1, 2017, the United States Court of Appeals for the Eighth Circuit affirmed in part and reversed in part. See *Wilson v. Ark. Dept. of Human Servs.*, 850 F.3d 368 (8th Cir. 2017). The Eighth Circuit affirmed the Court's dismissal of Wilson's disparate treatment claim but reversed the dismissal of her retaliation

claim and remanded for proceedings consistent with its opinion.

Now before the Court is a motion [doc.#26] of DHS for summary judgment on Wilson's Title VII retaliation claim--the sole remaining claim in this action.[1] Wilson has responded in opposition to DHS's motion and DHS has replied to Wilson's response. For the reasons that follow, the Court grants DHS's motion for summary judgment.

I.

Wilson went to work for DHS in June 2011 as a field investigator in the Division of Aging and Adult Services in the Adult Protective Services section. Patricia Robins, a white female, was Wilson's supervisor. Douglas Walker, a white male, serves as head of the Division of Aging and Adult Services. Sharon Meeks, an African-American female, was also employed as a field investigator in the same section.

In April 2013, Meeks and Robins, among others, applied for a DHS Administrator's position. According to Wilson, Meeks's supervisor met with Meeks in August 2013 to advise her that she was under investigation for making

---

[1] Concerning Wilson's claims under 42 U.S.C. § 1983, the Court noted in its Opinion and Order granting DHS's motion to dismiss that "Title VII provides the exclusive remedy for employment discrimination claims created by its own terms, but 'its exclusivity ceases when the employer's conduct also amounts to a violation of a right secured by the Constitution.'" *Wilson*, 2015 WL 9244650, at *1 n.1 (quoting *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012)). The Court determined that Wilson did not make any allegations to support a claim based on a violation of the Constitution. *Id*. The Court makes that same determination today.

-2-

calls of a sexual nature. Walker directed Robins to investigate the allegations. In September 2013, Meeks was terminated for allegedly violating DHS's policy against sexual harassment. Robins received the administrator position that she and Meeks had been seeking.

Meeks filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) and also filed an internal grievance with DHS over her firing. In January 2014, the State Appeal Panel reversed her termination and ordered DHS to reinstate Meeks. According to the complaint, DHS resisted the ruling, telling Meeks there were no available positions. Meeks, however, apparently discovered there was a program supervisor position available in the Division of Aging and Adult Protective Services, where Meeks had previously worked.

During the early part of 2014, Robins encouraged Wilson to apply for a program supervisor position that previously was held by a white male. Wilson alleges Robins told her the position was open for only one week and she needed to apply as soon as possible.

Unbeknownst to Wilson, Meeks was interested in the position and either had applied or was planning to apply. Wilson says Robins also encouraged Tony

Malone, an African-American male, to apply for the position, but Malone decided against applying.

Wilson alleges Robins knew that Meeks was qualified and was interested in applying for the program supervisor position. She claims Robins was determined to thwart Meeks's goal to return to the Division of Adult and Protective Services.

Wilson applied for the position and was told by the Office of Personnel Management (OPM) that she did not meet the minimum qualifications for the job. She said Robins and Walker encouraged her to file for reconsideration with the OPM, which she did. The OPM made the same determination. Wilson alleges Walker then contacted an assistant director and Wilson was placed on the list of qualified candidates and granted an interview. According to Wilson, she and Meeks were the only candidates for the position, and on March 31, 2014, Wilson got the job as a program supervisor. DHS re-hired Meeks in Wilson's old position, but fired her three months later.

Wilson states that shortly before and after her promotion, she received positive performance evaluations. She alleges that after Meeks was fired, Robins began to criticize her performance. Wilson claims the criticism was unfair and racially motivated.

On June 30, 2014, Robins gave Wilson the option of being demoted to the field investigator position for Saline and Grant counties, or be terminated. Wilson did not agree to a demotion to her old position and stayed in the position of program supervisor. Wilson states there was no explanation given to her of why she wasn't terminated when she did not agree to a demotion. She states that she sent Walker an email informing him that she did not want to take a demotion and that after that, Walker "basically told [Robins] that it was going to remain the same for the time being, that I would stay in the position."

On July 2, 2014, Wilson was stripped of her supervisory duties, with Robins stating in an email to Wilson (among others) that "due to some internal changes, supervisory responsibilities will divert back to me until further notice." That same day, however, Wilson's supervisory duties were reinstated. Robins noted in an email to Wilson that in her earlier email, she "stated until further notice….well here is the notice! Doug and I have spoken again and he would like to revert back for the time being." Walker, in turn, stated in an email that same night that Wilson's being stripped of her supervisory duties was a result of a miscommunication between him and Robins. He informed Wilson that if she chose to continue in her present position she would "be responsible for all the job duties including those of a supervisory nature."

On August 22, 2014, Wilson received a 9-page non-disciplinary counseling statement documenting numerous performance issues and insubordinate behavior going back to April 24, 2014. Subsequently, on September 8, 2014, Wilson filed a charge of discrimination with the EEOC, alleging that she had been harassed because of her race and disability.[2]

On September 30, 2014, Wilson was placed on a Performance Improvement Plan (PIP). Wilson alleges she was placed on the PIP in retaliation for filing the EEOC charge. DHS policy forbids supervisors from retaliating against employees for engaging in protected conduct.

On October 7, 2014, Wilson received a written warning for numerous performance issues. Some two weeks later, on October 22, 2014, Wilson was given a written warning for work performance issues and thereupon terminated from her employment because it was a second related written warning within a PIP period. The next day, Wilson filed a second EEOC charge alleging she was discharged because of her race and in retaliation for her previous complaint about discrimination.[3]

---

[2] In her deposition, Wilson inexplicably states that prior to filing her September 8th EEOC charge, Robins did not raise any concerns about her performance as a supervisor, this despite the August 22nd counseling statement issued by Robins prior to the filing of the EEOC charge documenting Wilson's numerous performance issues and insubordinate behavior going back to April 2014.

[3] In July 2015, Wilson was rehired by another division within the DHS and remains

II.

DHS moves for summary judgment on Wilson's retaliation claim on grounds that the facts in this action do not support an inference of unlawful retaliation in violation of Title VII and that it is entitled to summary judgment as a matter of law.

A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

---

employed by the DHS at this time.

judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

B.

1.

To survive a motion for summary judgment on a retaliation claim, a plaintiff may either offer direct evidence of retaliation or satisfy the *McDonnell Douglas* burden-shifting framework. *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014) (citation omitted). Having failed to produce direct evidence of retaliation,[4] Wilson must first establish a prima facie case of retaliation by proving (1) she engaged in statutorily protected conduct, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two. *Wilson*, 850 F.3d at 372 (citation

---

[4] "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse-action was in retaliation for the protected conduct." *Id*. (citation omitted).

and quotation marks omitted).  To establish causation, Wilson must prove "'the desire to retaliate was the but for cause of'" the adverse employment action, "that is, 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of [DHS].'"  *Wright v. St. Vincent System*, 730 F.3d 732, 737 (8th Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 352, 360 (2013)).  "It is not enough that retaliation was a substantial or motivating factor in the employer's decision."  *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (citation and internal quotation marks omitted).  If Wilson establishes her prima facie case, DHS must then rebut it by presenting evidence of a legitimate, non-retaliatory reason for the adverse employment action it took against Wilson.  *Fiero v. CSG Systems, Inc.*, 759 F.3d 874, 880 (8th Cir. 2014) (citation and quotation marks omitted).  If DHS satisfies this burden, Wilson is then obliged to present evidence that (1) creates a question of fact as to whether DHS's proffered reason was pretextual and (2) creates a reasonable inference that DHS acted in retaliation.  *Id*.

2.

Given the Eighth Circuit's opinion in this action, the Court assumes that Wilson has established a prima facie case and will proceed to the remaining stages of the *McDonnell Douglas* burden-shifting framework.  See also *Hannoon v. Fawn*

*Engineering Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003) ("[I]t remains permissible for lower courts to bypass analysis of the prima facie case where the facts permit easy disposition under a later stage of the *McDonnell Douglas* test.").

There is no question that the DHS has articulated a legitimate, non-discriminatory reason for Wilson's termination: her poor work performance. Wilson, however, argues DHS's asserted reason for her termination is pretextual. As evidence of pretext, Wilson first points out that Robins in the August 22, 2014, written counseling statement, Robins directed Wilson not to "make accusatory statement [sic] to her supervisor or to others about her supervisors." Wilson argues that this shows that Robins was angered by her complaint of racial discrimination. It is clear, however, that in the context of the counseling statement, Robins was referring to the numerous accusations Wilson made to or about Robins that are documented in the statement, such as Wilson calling Robins a liar or claiming to Walker that Robins "was enslaving her" and abusing her power against her. There is nothing indicating that Robins' instructions about making accusations had anything to do with complaints of racial discrimination.

Wilson also argues that on one occasion when she went to Robins' office, Robins told her that she needed to "stop filing complaints" and to get out of her office. Wilson, however, stated in her deposition that she did not know if that

comment was made after she filed an August 2014 grievance or after she filed the EEOC charge. The context of her deposition testimony indicates that the comment by Robins was in reference to Wilson complaining to and about Robins in emails to Robins and Walker that predate the EEOC charge and do not specifically reference complaints of racial discrimination.[5]

Wilson next argues that emails sent on August 15, 2014, and August 20, 2014, were protected activity but that these emails nevertheless led to the August 22, 2014 counseling statement. These emails, however, predate the EEOC charge and do not specifically reference complaints of racial discrimination but simply contain numerous accusations about personnel issues and Robins' attitude towards her.

Finally, Wilson states that after she filed her EEOC charge on September 8, 2014, DHS issued her a lowered performance evaluation and PIP on September 30, 2014, and then terminated her on October 22, 2014. Wilson argues that it is obvious that these acts were designed to punish and dissuade her and others from complaining about discrimination.[6] But this does not create a reasonable inference

---

[5] Counsel later led Wilson in her deposition into indicating that Robins' comment to quit filing complaints came after the first EEOC charge. But even then, Wilson acknowledged that Robins did not reference the EEOC charge and Wilson again referenced complaints she made about Robins to Robins' supervisor, complaints that, again, predate the EEOC charge and do not specifically reference complaints of racial discrimination.

[6] In her deposition, Wilson states that she thinks the actual reason for her termination was

that Wilson was terminated in retaliation for filing her EEOC charge as it is clear that the documentation of Wilson's poor work performance and the process leading to her termination began prior to her filing her EEOC charge. *Cf. Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").[7]

In sum, the Court finds that Wilson has not presented evidence that (1) creates a question of fact as to whether DHS's proffered reason for her termination was pretextual, and (2) creates a reasonable inference that DHS acted in retaliation.

III.

For the foregoing reasons, the Court grants the Arkansas Department of Human Services' motion for summary judgment [doc.#26]. The Court will enter judgment accordingly.

IT IS SO ORDERED this 30th day of August 2018.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

because she declined to go back to her previous position as a field investigator after Meeks was terminated, although she later stated that she thought another reason was her filing of the EEOC charge.

[7] The Court notes that when Wilson accused Robins in an email of violating HIPPA by mentioning a health condition in an earlier meeting, Robins replied that Wilson needed to report the incident if she felt it was a HIPPA violation.